**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **MICHAEL JONES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:19-cv-00143-O-BP** |
| | § | |
| **ANDREW M. SAUL,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Michael Jones ("Jones") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

## I.    STATEMENT OF THE CASE

Jones was born on September 13, 1979 and has a limited education. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 12-1 at 25. He filed twice for disability insurance benefits ("DIB"): once on May 13, 2016, alleging a disability onset date of February 16, 2016, and again on April 28, 2017, alleging an onset date of March 20, 2015. Tr. 11. The SSA denied both claims because Jones had not worked long enough to be insured for Title II disability benefits. *Id.* Jones did not appeal either denial. *Id.*

Jones filed twice for SSI: once on March 28, 2016, alleging an onset date of February 16, 2016, and again on April 28, 2017, alleging an onset date of March 20, 2015. *Id.* On April 28, 2017, Jones was 37 years old, which is defined as a younger individual. Tr. 11, 25. The SSA denied both applications, finding that Jones was not disabled under the SSA. Tr. 11. Jones did not appeal the first denial, but he appealed the second one. *Id.* The SSA denied his claim again upon reconsideration on October 30, 2017. *Id.* Jones requested a hearing, which was held before Administrative Law Judge ("ALJ") Edward L. Thompson on January 10, 2019 via videoconference. Tr. 11, 26. The ALJ issued an unfavorable decision on March 26, 2019, finding that based on the application for SSI filed on April 28, 2017, Jones was not disabled. Tr. 26.

In the decision, the ALJ employed the statutory five-step analysis and established during step one that Jones had not engaged in substantial gainful activity since April 28, 2017, the application date. Tr. 13. At step two, he determined that Jones had the severe impairments of epilepsy, depression, bipolar disorder, an impulse control disorder, and post-traumatic stress disorder. Tr. 14. He found that Jones had moderate limitations in all four of the "paragraph B" criteria: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing himself. Tr. 15. At step three, the ALJ found that Jones's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 14. He found that Jones had

> the residual functional capacity to perform light exertion work as defined in [20 C.F.R. § 416.927(b)], except the claimant can never climb a ladder, rope, or scaffold; the claimant can occasionally stoop, crouch, and climb ramps/stairs; and the claimant must avoid even moderate exposure to hazards, such as dangerous moving machinery and unprotected heights. Mentally, the claimant can understand, remember, and carry out only "simple" instructions ("simple" instructions refers to unskilled entry-level work with [an] SVP of one or two), make "simple" decisions ("simple" decisions refers to unskilled entry-level work with [an] SVP of one or

two), attend and concentrate for extended periods (i.e., the claimant can attend and concentrate for the two-hour periods of work throughout an 8-hour workday with standard work breaks occurring every two hours), interact adequately with co-workers and supervisors, the claimant can occasionally interact with the general public, the claimant can respond appropriately to changes in the routine work setting for unskilled entry-level work with [an] SVP of one or two, and the claimant is limited to performing occupations that have a U.S. Department of Labor Dictionary of Occupational Titles General Education Development Reasoning Level of one or two. The claimant has no other physical or mental limitations or restrictions.

Tr. 16. At step four, the ALJ relied on the Social Security Administration's expedited process and made no findings concerning Jones's past relevant work. Tr. 24. At step five, the ALJ found that jobs that Jones could perform exist in significant numbers in the national economy, so a finding of "not disabled" was appropriate. Tr. 25.

The Appeals Council denied review on October 22, 2019. Tr. 1. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant

must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)– (b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197– 98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837

F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.    ANALYSIS

Jones raises three issues on appeal. He claims that the ALJ erred by (1) failing to provide good reasons for his evaluation of Dr. Sasano's opinion, (2) improperly evaluating Jones's reports that he attended special education classes and has trouble reading and writing, and (3) failing to consider possible reasons for Jones's non-compliance with his treatment. ECF No. 14 at 1, 20, 25.

#### A.    The ALJ properly evaluated Dr. Sasano's opinion.

Jones argues that the ALJ did not provide good reasons for his evaluation of the medical opinion of Carolyn Sasano, Ph.D. ("Dr. Sasano"). ECF No. 14 at 15. He asserts that the ALJ erred by finding Dr. Sasano's opinion persuasive and well-supported by the evidence while also finding that parts of it were inconsistent with the record and other parts of the opinion. *Id.* at 16. He argues that the ALJ failed to articulate valid reasons for accepting parts of the opinion and rejecting more restrictive parts, and the ALJ's error was not harmless. *Id.* at 19–20.

The Commissioner responds that the ALJ properly applied the factors used to evaluate medical opinions set forth in 20 C.F.R. § 416.920c. ECF No. 15 at 10–11. He further argues that while Jones points to specific statements by Dr. Sasano to support his argument that he is disabled, these statements are not medical opinions because they do not express specific work abilities or limitations. *Id.* at 12.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Here, Dr. Sasano is an acceptable medical source under 20 C.F.R. § 416.902(a)(2) because she is a licensed psychologist. Tr. 1550.

"The ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Stephens v. Barnhart*, 174 F. App'x 232, 233 (5th Cir. 2006) (quoting *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)) (internal quotation marks and brackets omitted). "Conflicts in the evidence, including the medical evidence, are to be resolved, not by a reviewing court, but by the ALJ." *Id.* (quoting *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985)) (internal quotation marks and brackets omitted). When evaluating a medical opinion, the ALJ must consider the supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict the medical opinion. 20 C.F.R. § 416.920c(c). Because supportability and consistency are the most important factors, he must articulate his analysis of these factors for each medical opinion. *Id.* § 416.920c(b)(2).

Here, the ALJ articulated his analysis of the supportability and consistency of Dr. Sasano's conclusion that Jones had a provisional diagnosis of borderline intelligence. Tr. 21–22. The ALJ

stated that this diagnosis was not persuasive because Jones completed eleventh grade, attended no special education classes, and can read and understand English. Tr. 21. He noted that Jones's statement to Dr. Sasano that he attended special education classes is inconsistent with his reports on May 13, 2016 and April 28, 2017 that he did not attend special education classes. Tr. 22, 230, 267. Jones argues that he did not make these statements, but the ALJ weighed the evidence and decided that the statements were credible. *See* Tr. 22. The Court may not reweigh the evidence and second-guess this determination so long as substantial evidence supports the ALJ's ultimate finding, as it does here. *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016). Even if Jones had attended special education classes, however, any error by the ALJ in relying on the reports from May 13, 2016 and April 28, 2017 would be harmless.

"Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006). The ALJ found that Jones can perform the requirements of unskilled occupations, which means that Jones's reading and writing ability "have little significance upon the ability to perform" the work. *Griffin v. Astrue*, No. 5:09-CV-044-C, 2010 WL 597817, at *4 (N.D. Tex. Feb. 19, 2010); Tr. 25. The jobs that the ALJ found that Jones can perform—office cleaner, small products assembler, and food production worker—require very little reading and writing. Tr. 25; *see Dictionary of Occupational Titles*, § 323.687-014, 1991 WL 672783; § 520.687-046, 1991 WL 674058; § 739.687-030, 1991 WL 680180. Because the jobs require little reading and writing, it is inconceivable that a different administrative conclusion would have been reached regardless of whether the ALJ found that Jones attended special education classes and had poor reading and writing skills.

Moreover, the ALJ discussed other evidence that supported his decision to discount Dr. Sasano's provisional diagnosis of borderline intelligence. He noted that Jones reported the ability to handle a savings account, pay bills, use a checkbook, and play cards; no limitations on understanding; and an "OK" ability to follow spoken instructions. Tr. 23. The ALJ also incorporated other medical sources' opinions into his discussions, comparing those opinions to Dr. Sasano's opinion. *Id.* at 18–23. Because the ALJ properly articulated and discussed the supportability and consistency of Dr. Sasano's medical opinion—specifically, the provisional diagnosis of borderline intelligence—reversal on this issue is not warranted.

**B.    The ALJ properly evaluated Jones's reports about his education.**

Jones argues that the ALJ mischaracterized the evidence by finding that his reports of attending special education classes and lacking reading and writing skills were inconsistent with the record evidence. ECF No. 14 at 20. He argues that the ALJ was improperly "picking and choosing" the evidence that supported his position. *Id.* He further argues that the ALJ relied on Function Reports and Disability Reports that he says Jones completed, but there is no evidence that Jones completed these forms. *Id.* at 22. He contends that the ALJ "improperly relied upon the opinions of lay [Social Security Administration] employees to discredit [Jones's] reports of special education and limited reading and writing ability." *Id.* at 23.

The Commissioner argues that Jones essentially claims he is illiterate, but the evidence shows that he is not and instead has a limited education. ECF No. 15 at 14. He also argues that Jones is essentially asking the Court to reweigh the evidence, which the Court is not permitted to do. *Id.* at 15.

The ALJ found that Jones's statement to Dr. Sasano that he attended special education classes is inconsistent with his reports on May 13, 2016 and April 28, 2017 that he did not attend special education classes and that he can read and understand English. Tr. 22, 230, 267. Jones

argues that he did not author those reports, but resolution of this conflicting evidence was for the ALJ and not this Court to resolve. And even if he is correct and the ALJ should have determined that he did not attend special education classes and had a very limited ability to read and write, any error by the ALJ in relying on the statements is harmless for the reasons discussed above.

### C.    The ALJ properly evaluated Jones's non-compliance with prescribed treatment.

Jones argues that the ALJ violated SSR 16-3p by failing to consider possible reasons for Jones's non-compliance with his treatment. ECF No. 14 at 25–26. He argues that the ALJ improperly made the RFC determination with the presumption that Jones would comply with his treatment. *Id.* at 26. He contends that instead, the ALJ should have first determined Jones's RFC based solely on his functional limitations in the record, and if the RFC resulted in a finding of disabled, he should have then considered whether Jones had good reason for non-compliance. *Id.* Jones argues that the ALJ did not properly apply SSR 82-59 before concluding that he did not comply with his treatment. *Id.* at 26–27.

The Commissioner argues that SSR 82-59 does not apply here because the ALJ did not find Jones disabled and then determine that he would not be disabled if he complied with treatment. ECF No. 15 at 20–21. Rather, he considered Jones's non-compliance as a factor while evaluating Jones's credibility, and he determined that Jones's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record evidence. *Id.* at 19, 21.

At step four, the ALJ considers the claimant's RFC, which involves assessing the claimant's allegations of symptoms. Pursuant to SSR 16-3p, an ALJ must conduct an objective-subjective, two-step analysis to make this assessment. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008) (per curiam); SSR 16-3p, 2017 WL 5180304, at *2–3. In the first, objective step,

the ALJ must determine whether an impairment exists that could reasonably be expected to produce the claimant's symptoms. *Salgado*, 271 F. App'x at 458–59. Here, the ALJ found that many impairments existed that could reasonably be expected to produce Jones's symptoms. Tr. 14, 22.

If the ALJ identifies an impairment at step one, the ALJ proceeds to the second, subjective step and "considers the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work." *Id.* This requires a credibility finding regarding the applicant's claims about symptoms. *Id.* "A claimant's non-compliance with treatment is a proper factor for the ALJ to consider in assessing credibility." *Robinson v. Astrue*, No. H-09-2497, 2010 WL 2606325, at *8 (S.D. Tex. June 28, 2010) (citation omitted).

If a claimant fails to follow his prescribed treatment without good reason, the Social Security Administration will not find him disabled. 20 C.F.R. § 416.930(b). In order to find that a claimant failed to follow prescribed treatment, four conditions must be present:

> 1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA) or, in the case of a disabled widow(er) that the impairment meets or equals the Listing of Impairments in Appendix 1 of Regulations No. 4, Subpart P; and
> 2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and
> 3. Treatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source; and
> 4. The evidence of record discloses that there has been refusal to follow prescribed treatment.
> Where SSA makes a determination of "failure," a determination must also be made as to whether or not failure to follow prescribed treatment is justifiable.

SSR 82-59, 1982 WL 31384. Jones has not shown that these four conditions have been met. He does not point to evidence that sufficiently establishes that his impairment precludes engaging in SGA or is expected to either last for 12 continuous months or result in death. *See* ECF Nos. 14,

16. Further, because he has not shown that he cannot engage in SGA, he cannot show that a treating source prescribed treatment that was clearly expected to restore capacity to engage in SGA or that he refused to follow that prescribed treatment. Because the four conditions have not been met, the ALJ was not required to discuss whether Jones's failure to follow prescribed treatment was justifiable.

Additionally, Jones argues that the ALJ improperly "circumvent[ed] the requirements of SSR 82-59 . . . by couching [his] analysis of . . . noncompliance in terms of an RFC determination." ECF No. 14 at 27 (citing *Lindsey v. Astrue*, No. 3:09-CV-1649, 2011 WL 817173, at *8 (N.D. Tex. Mar. 9, 2011)). He argues that the ALJ "change[d] the RFC to account for presumed functioning while following treatment." *Id.* This case differs from *Lindsey*, however, because in *Lindsey*, the ALJ relied almost exclusively on substance abuse and non-compliance with prescribed treatment to determine the plaintiff's RFC. *Lindsey*, 2011 WL 817173, at *8. Here, the ALJ discussed and considered a variety of medical reports, testimony from Jones, and other evidence in determining Jones's RFC. The undersigned cannot conclude that the ALJ erred by failing to apply SSR 82-59. Therefore, reversal on this basis is not required.

## IV.    CONCLUSION

Because the ALJ employed the correct legal standards, substantial evidence in the record supports his decision, and Jones has failed to show that reversal of the decision is required, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with

a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed on June 22, 2020.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

12